NOT FOR PUBLICATION                                                           (Doc. Nos. 33, 40)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                         :
JASON I. FARROW,                         :
                                         :
            Plaintiff,                   :    Civil No. 12-1105 (RBK/JS)
                                         :
      v.                                 :    **OPINION**
                                         :
CAPE MAY COUNTY                          :
CORRECTIONAL CENTER, et al.,             :
                                         :
            Defendants.                  :
_____   :

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Jason I. Farrow ("Plaintiff") for summary judgment, and on a motion by Cape May County Correctional Center, Gary G. Schaffer, Sheriff, Donald J. Lombardo, Warden, and Captain Krench[1] (collectively "Defendants") for summary judgment. Because both summary judgment motions relate to the same underlying events, they are considered jointly. For the reasons expressed below, Defendants' motion will be **GRANTED IN PART**, and Plaintiff's motion will be **DENIED**.

   I.   BACKGROUND

This matter arises out of the pro se complaint of Mr. Farrow, who was housed at the Cape May County Correctional Center ("CMCCC") for approximately three weeks in 2010, and then again for three and a half months in 2011. Am. Compl ¶¶ 7-8. His allegations appear to

---

[1] Evidently, the defendant named as Captain Krench in this matter refers to Captain Kathleen Krych of the Cape May County Correctional Center. See Proposed Pre-Trial Order at 9 (ECF Doc. No. 42).

primarily focus on the alleged inadequacy of the law library that is available to inmates at CMCCC.  Id. ¶¶ 7-9.  Farrow alleges that he was limited to a copying allowance of ten pages per week, and that the law library was inadequate because it only is designed to allow access to legal resources through a single computer portal loaded with the LexisNexis database, which is a computer database containing case opinions and other legal research materials.  Pl. Mot. Summ. J. at 6.  The CMCCC library does not contain any volumes of books.  Id.  Plaintiff also argues that the criminal justice system in Cape May County is unconstitutional, and that defense counsel assigned to indigent defendants purposely keep their clients in the dark about the proceedings as part of a conspiracy against criminal defendants.  Id.  He asserts that Defendants are complicit in this alleged conspiracy by insuring that those charged with crimes in Cape May County cannot learn about their legal rights due the state of the law library at the CMCCC.  Id. at 6-7.

Farrow filed his complaint on January 6, 2012, in the Superior Court of New Jersey, Law Division, Cape May County, alleging that CMCCC's practices violated his constitutional rights.  Plaintiff also included counts alleging intentional infliction of emotional distress and negligence.  On February 27, 2012, Defendants removed the case to this Court pursuant to its jurisdiction under 28 U.S.C. § 1331.  On July 9, 2013, Plaintiff filed an amended complaint, and the instant motions followed.[2]

## II.    STANDARD FOR SUMMARY JUDGMENT

---

[2] The Court observes that Plaintiff has not filed an opposition brief in connection with Defendants' motion for summary judgment.  This alone is not a sufficient basis for the entry of summary judgment.  See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  The Court must determine whether the motion is adequately supported and whether a grant of summary judgment is appropriate under Fed. R. Civ. P. 56(e).  See Hooks v. Schultz, Civ. No. 07-5627, 2010 WL 415316, at *3 (D.N.J. Jan. 29, 2010).  In addition, because the two motions largely relate to the same subject matter, the Court has considered Plaintiff's arguments in his brief in support of his affirmative motion in connection with both motions.

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  Anderson, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  Id. at 255; Matsushida, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  Anderson, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which jury might return a verdict in its favor.  Id. at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

**A.  Status of CMCCC as a Defendant**

Although Plaintiff does not refer to 42 U.S.C. § 1983 in his motion papers or in the text of his Amended Complaint, the Court construes his claims for constitutional violations as brought pursuant to Section 1983's enforcement mechanism.  The caption of his complaint refers to Section 1983, and that statute is the primary means available for enforcing the constitutional violations that he alleges.  See Hassoun v. Cimmino, 126 F. Supp. 2d 353, 364 (D.N.J. 2000) (citing Rogin v. Bensalem Twp., 616 F.2d 680, 686-87 (3d Cir. 1980)).  In a Section 1983 action, a plaintiff must initially show that (1) the complained-of conduct was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights guaranteed by the laws or the Constitution of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Here, Plaintiff's claims against CMCCC fail as an initial matter because a county prison or correctional facility is not a "person."  See Regan v. Upper Darby Twp., Civ. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) ("In the Third Circuit, it is well-settled that a prison or correctional facility it not a 'person' that is subject to suit under federal civil rights laws."); Slagle v. Cnty. of Clarion, 435 F.3d 262, 264 n.3 (3d Cir. 2006) (observing that the district court dismissed a county jail as a defendant because it is not a "person" under federal civil rights law).  Because a correctional facility is not a person amenable to a Section 1983 suit, Plaintiff's claims against it fail as a matter of law and summary judgment must be granted in favor of CMCCC.

### B. Constitutional Adequacy of the Law Library

Plaintiff describes the law library at CMCCC as an old supply closet measuring approximately 8 feet by 10 feet, containing four or five chairs and a single computer console.  Pl.

4

Mot. Summ. J. at 13.[3]  Inmates cannot use the computer to print documents on their own or for word processing.  Id.  As a result of these allegedly inadequate facilities, Plaintiff claims that he was prevented from litigating in a Family Court proceeding.  Id.  This allegation, if true, does not rise to the level of a constitutional violation.[4]  The constitutional right of access to the courts only extends to what is necessary for incarcerated persons to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  Lewis v. Casey, 518 U.S. 343, 355 (1996).  "Impairment of any other litigating capacity is . . . perfectly constitutional."  Id. at 355 (emphasis in original).  Thus, the alleged failure by CMCCC and its officials to provide Plaintiff access to resources that would have allowed him to better litigate his Family Court case does not amount to a constitutional violation.

Even if access to legal resources related to an inmate's criminal case or the conditions of confinement are improperly restricted, a plaintiff must show that as a result of the denial of access, he (1) lost the opportunity to "pursue a 'nonfrivolous' or 'arguable' underlying claim," and that (2) he has no other remedy but a civil rights action to compensate for the lost claim.  Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).  Here, aside from the Family Court matter, Plaintiff refers to a motion for reconsideration that he claims he would have filed had he been provided with additional law library resources.  See Pl. Mot. Summ. J. at 5.  While it is not clear whether that proposed motion is related to his criminal case, even if it is, he has not shown what

---

[3] Plaintiff does not support his motion by citing to materials in the record, such as documents, affidavits, or declarations.  See Fed. R. Civ. P. 56(c)(1).  However, because Plaintiff is proceeding pro se, and because the motion can be decided on other grounds, the Court does not decide the motion on this basis.
[4] Although the Court does not decide the issue of whether CMCCC's law library is adequate, the New Jersey Appellate Division has indicated in an unpublished case that the section of the New Jersey Administrative Code that provides for inmate law libraries "does not provide inmates a right to direct access to hard copies of legal research materials . . . especially when those materials are available electronically."  Conley v. New Jersey Dep't of Corr., 2008 WL 4108052, at *2 (N.J. Super. App. Div. Sept. 8, 2008) (citing N.J.A.C. 10A:6-2.4).

ruling he wanted reconsidered or on what legal basis he may have prevailed.  Thus, Plaintiff has not demonstrated that he had a non-frivolous claim that he could have presented.  Plaintiff also refers in his motion to the adequacy of his appointed criminal defense counsel and alleged conspiracies between his defense counsel and prosecutors.  However, he has not shown any connection between alleged limitations on his ability to do legal research and the resulting loss of an opportunity to challenge the adequacy of his counsel.  He presents no evidence to show that he actually challenged the adequacy of his attorney at the time he was detained at CMCCC.  He does not explain what law he would have discovered that may have allowed him to challenge the adequacy of his counsel if the library had contained books, more computers, or he had been permitted to print more material.  Nor has he set forth any facts suggesting that additional legal resources would have enabled him to argue a non-frivolous claim about the conspiracy that he alleges.[5]

Finally, while it appears that Plaintiff claims that decisions made with respect to his access to the law library at CMCCC may have been in violation of the prison policy manual, even if true, this does not support a constitutional violation.  A "deviation from an internal guideline does not itself trigger a violation of constitutional dimension."  Whitcraft v. Twp. of Cherry Hill, 974 F. Supp. 392, 398 (D.N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986)).

### C.  Intentional Infliction of Emotional Distress

---

[5] To the extent that Plaintiff seeks to make a claim related to the actual adequacy of his counsel and the alleged collusion between his attorney and prosecutors and/or judges, as opposed to the ability to perform legal research to challenge these issues, these claims are not cognizable against the defendants in this matter.  See Pl. Mot. Summ. J. at 7.  Only CMCCC and its corrections officials are named in this suit, none of whom had anything to do with assigning counsel to represent Plaintiff or actually representing or prosecuting him in his underlying criminal proceedings.

Plaintiff has not produced evidence that sets forth a prima facie claim for intentional infliction of emotional distress ("IIED"), and thus Defendants' motion for summary judgment will be granted as to this claim.

A plaintiff must prove four elements to establish a claim for IIED under New Jersey law.[6] He must show "(1) that defendant acted intentionally or recklessly; (2) that defendant's conduct was extreme and outrageous; (3) that defendant's actions were the proximate cause of the plaintiff's distress; and (4) that the emotional distress suffered by the plaintiff was severe." Hill v. New Jersey Dep't of Corr. Comm'r Fauver, 342 N.J. Super. 273, 297 (App. Div. 2001) (citing Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988)).

Here, it appears doubtful that Plaintiff has produced sufficient evidence to meet any of the elements of an IIED claim. However, in particular, he has not shown that he has actually suffered any severe emotional distress. He has not produced any reports from doctors or other medical or mental health professionals indicating that he has suffered severe emotional distress. Nor is there evidence in the record suggesting that this is the case. Under New Jersey law, in an IIED case, the resulting distress must be "so severe that no reasonable man could be expected to endure it." Buckley, 111 N.J. at 366-67 (citing Restatement (Second) of Torts § 46, comment j). It is not sufficient for a party to merely assert that he or she has suffered distress, or even to describe symptoms such as aggravation, headaches, or difficulty sleeping. See Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 26 (App. Div. 2001) (citing Taylor v. Metzger, 152 N.J. 490, 515 (1998)). For this reason, summary judgment must be granted on the IIED claim.

---

[6] This court exercises supplemental jurisdiction over Plaintiff's state law claims because his federal claim is properly before the Court. 28 U.S.C. § 1367(a). It is clear that New Jersey law applies to the state law claims, as Plaintiff is a citizen of New Jersey, and all of the events giving rise to this action took place in New Jersey.

### D. Plaintiff's Negligence Claims

No judgment will be entered by this Court on Plaintiff's state law claims for negligence, as Defendants have not set forth any argument that his negligence claims should be dismissed. Federal courts have jurisdiction to hear nonfederal claims through supplemental jurisdiction, which is conferred by 28 U.S.C. § 1367. That statute provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). District courts may decline to exercise supplemental jurisdiction over a claim when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In this case, the third scenario is implicated, because all of the claims that the court exercises "federal question" jurisdiction over pursuant to 28 U.S.C. § 1331 will be dismissed in connection with Defendants' summary judgment motion. In "instances in which the district court has dismissed all claims over which it has original jurisdiction, courts typically have declined to exercise supplemental jurisdiction over remaining, state-law claims." Whitcraft, 974 F. Supp. at 400 (D.N.J. 1996) (citing Ricci v. Gooberman, 840 F. Supp. 316

8

(D.N.J. 1993); Bermingham v. Sony Corp. of Am., 820 F. Supp. 834 (D.N.J. 1992)).  In a removed case such as this one, the state law claims must be remanded to state court rather than dismissed for lack of jurisdiction.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988).  Thus, the remainder of this action will be remanded to state court.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment will be **DENIED**, and Defendants' motion will be **GRANTED IN PART**.  Summary judgment will be entered on Plaintiff's constitutional claims brought under Section 1983, on his IIED claims, and in full as to CMCCC.  An appropriate Order shall enter, remanding the remainder of the case to the Superior Court of New Jersey, Law Division, Cape May County.


Dated:  02/26/2014                                        /s/ Robert B. Kugler
                                                                       ROBERT B. KUGLER
                                                                       United States District Judge